IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

CHAD D. KOHL,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C14-0110

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    A.   Kohl's Education and Employment Background . . . . . . . . . . . . . . . 4
    B.   Vocational Expert's Testimony from November 21, 2012
        Administrative Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.   Kohl's Medical History . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.  CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . 9
    A.   ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . 9
    B.   Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . 11
    C.   Reversal or Remand . . . . . . . . . . . . . . . . . . . . . . . . . . 17

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

VI.  ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Chad D. Kohl on September 30, 2014, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits.[1] Kohl asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Kohl requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's

---

[1] On January 2, 2015, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

2

conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2011)).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015)

("'If substantial evidence supports the Commissioner's conclusions, th[e] court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome.' *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)."); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

### III. FACTS

#### A. Kohl's Education and Employment Background

Kohl was born in 1976. He did not graduate from high school, but later earned a GED. In the past, Kohl worked as a cashier, cook, and hand packager.

#### B. Vocational Expert's Testimony from November 21, 2012 Administrative Hearing

At the hearing, the ALJ provided vocational expert Vanessa May with a hypothetical for an individual with no exertional limitations, who can:

> occasionally climb ladders, ropes and scaffolds, and should avoid concentrated exposure to extremes of heat and cold, pulmonary irritants and hazardous conditions.

(Administrative Record at 59.) The vocational expert testified that under such limitations, Kohl could perform his past relevant work as a cashier. Next, the ALJ inquired:

> Q: So, let's take that same person and say a limitation to light work, as that term is defined in the DOT and regulations. Any past work?
> A: Again, the cashiering work would be available.
> Q: Okay. Let's take either one of those two hypotheticals and add in this person would be unable to attend to work approximately two days a month. . . . With that limitation, any work?

4

A: Generally speaking in unskilled occupations, there -- the employers would not tolerate that for a very long period of time. So, although people might get one day of sick leave and one day of vacation leave per month, if they continued to use that generally speaking they're not going to keep the job.
Q: So, no work?
A: Yes.

(Administrative Record at 59-60.)

### C. Kohl's Medical History

On October 5, 2008, Kohl was admitted to Mercy Medical Center in Cedar Rapids, Iowa, complaining of a headache and dizziness. On the night before he was admitted to the hospital, Kohl had an acute bout of vertigo and fell hitting his forehead on the floor. Kohl reported a ringing in his left ear, consistent with his history of Meniere's disease. Kohl was treated with medications and discharged from the hospital four days later.

Kohl was hospitalized again, for Meniere's disease and headaches on November 29, 2008. He was treated and discharged from the hospital on December 5, 2008. On April 26, 2009, Kohl presented to the emergency department, complaining of dizziness and a head injury. Prior to arriving at the emergency room, Kohl hit his head falling into a door. He was hospitalized overnight, and diagnosed with a flare-up of Meniere's disease.

On July 7, 2009, Kohl returned to the hospital, and was admitted due to exacerbation of Meniere's disease. He was treated and discharged from the hospital on July 9. Kohl was hospitalized again, from August 24 to 26, 2009, for migraine headache exacerbation and Meniere's disease. He was once again treated with medication and discharged. On November 15, 2009, Kohl, again, returned to the hospital for an acute exacerbation of Meniere's disease. He was admitted overnight and treated with medication.

On August 1, 2010, Kohl was hospitalized for an acute exacerbation of vertigo, associated with Meniere's disease. His symptoms started the day before, including nausea

and vomiting. Kohl was treated for dehydration and given medications to treat his vertigo and headaches. He was discharged on August 3. He was again hospitalized from September 7 to 9, 2010, for Meniere's disease, dizziness, and vertigo. Kohl presented at the emergency room on October 4, 2010, for fainting. He was treated and released. On November 19, 2010, Kohl presented at the emergency room for "worsening exacerbation of his Meniere's disease," including symptoms of nausea, vomiting, dizziness, and ringing in his ears. He was admitted to the hospital overnight, and treated with medication.

On December 22, 2010, Dr. Beverly Westra, Ph.D., reviewed Kohl's medical records and provided disability determination services ("DDS") with a Psychiatric Review Technique assessment for Kohl. Dr. Westra diagnosed Kohl with ADHD, depression, and anxiety. Dr. Westra determined that Kohl had the following limitations: mild restriction of activities of daily living, no difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Dr. Westra concluded that Kohl's "[a]lleged conditions are supported by the [medical evidence of record], but impairments are stable with medications and functioning shows no significant limitation. Impairments are considered nonsevere."[2]

On February 16, 2011, Kohl was referred by DDS to Dr. George T. Kappos, M.D., for a consultative examination. In reviewing Kohl's medical history, Dr. Kappos found:

> [Kohl] reports a history of Meniere's syndrome which has caused him several hospitalizations over the last few years. . . . When he develops an attack, it will last three to four days and at times has had to go through prolonged vestibular rehabilitation for several weeks to fully recover. The symptoms include vertigo, ringing in the ears and vomiting, which are typical symptoms of Meniere's disease. He uses a cane and/or walker to maintain his balance when he is having

---

[2] Administrative Record at 602.

> symptoms, but does not seem to need anything in between attacks.
>
> He reports a history of migraine headaches which he has had for some time. These were diagnosed by Dr. Vanden Bosch [(*sic*)] and are still followed by Dr. Vanden Bosch [(*sic*)]. He reports symptoms as a sharp pain behind his eyes, which can vary from a level of 3-8/10 with an average of 6/10. The pain is worsened by movement, light and sound. It is improved with medication and resting, if he is able to rest. He uses Imitrex tablets for his headaches and recently he also started using Imitrex injections at times. He states he will get headaches once or twice a month and they usually last four to five hours.

(Administrative Record at 604.) With regard to his activities of daily living, Dr. Kappos noted that Kohl primarily has problems with balance due to Meniere's disease, making standing, sitting, walking, and climbing stairs difficult at times. Dr. Kappos also noted problems with hearing, another symptom of Meniere's disease. Dr. Kappos reported that Kohl uses a cane and walker for balance as needed. Dr. Kappos opined that Kohl had no functional restrictions, except that he should never climb ladders because of the potential of falling.

On March 2, 2011, Dr. Matthew Byrnes, D.O., reviewed Kohl's medical records and provided DDS with a physical residual functional capacity ("RFC") assessment for Kohl. Dr. Byrnes determined that Kohl had no exertional, manipulative, visual, or communicative limitations. Dr. Byrnes also determined that Kohl could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Byrnes opined, however, that Kohl should never climb ladders, ropes, or scaffolds. Dr. Byrnes also determined that Kohl should avoid concentrated exposure to extreme cold, extreme heat, fumes, odors, dusts, gases, poor ventilation, and hazards, such as heights and machinery.

On May 2, 2011, Kohl's long-time treating physician, Dr. Daniel Vandenbosch, M.D., at the request of Kohl's attorney, filled out a "Meniere's Disease Residual

7

Functional Capacity Questionnaire" for Kohl.  Dr. Vandenbosch diagnosed Kohl with Meniere's disease, anxiety, depression, hypertension, and headaches.  Dr. Vandenbosch identified the following symptoms for Kohl: vertigo, nausea/vomiting, visual disturbances, mood changes, inability to concentrate, and fatigue/exhaustion.  Dr. Vandenbosch indicated that Kohl has 2 to 3 Meniere's attacks each month, lasting 2 to 5 hours.  Dr. Vandenbosch noted that post-attack, Kohl suffers from headaches and nausea for approximately 2 to 3 hours.  Dr. Vandenbosch found Kohl's prognosis to be poor.  Dr. Vandenbosch opined that Kohl would need to take unscheduled breaks several times per week, lasting from minutes up to an hour.  Dr. Vandenbosch determined that Kohl was incapable of even low stress jobs.  Dr. Vandenbosch opined that Kohl would have difficulty performing a regular full-time job due to headaches and dizziness.  Lastly, Dr. Vandenbosch opined that Kohl would miss four or more days of work per month due to Meniere's disease.

On the same date, Dr. Vandenbosch also filled out a "Headaches Residual Functional Capacity Questionnaire" for Kohl.  Dr. Vandenbosch diagnosed Kohl with cluster and migraine headaches.  Dr. Vandenbosch identified the following symptoms for Kohl: nausea/vomiting, photosensitivity, visual disturbances, mood changes, and mental confusion and inability to concentrate.  Dr. Vandenbosch indicated that Kohl suffers from migraine headaches 4 to 5 times per month, and cluster headaches every other month.  Dr. Vandenbosch estimated that Kohl's migraine headaches last most of the day, while his cluster headaches last 3 to 4 hours.  Dr. Vandenbosch found that Kohl's headaches are triggered by lack of sleep, noise, stress, and strong odors.  Dr. Vandenbosch also found Kohl's prognosis to be poor.  Dr. Vandenbosch opined that Kohl would need to take unscheduled breaks several times per week, lasting from minutes up to an hour.  Dr. Vandenbosch determined that Kohl was incapable of even low stress jobs.  Dr. Vandenbosch opined that Kohl would have difficulty performing a regular full-time

job due to his headaches. Lastly, Dr. Vandenbosch opined that Kohl would miss four or more days of work per month due to headaches.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Kohl is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the

> listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Kohl had not engaged in substantial gainful activity since August 15, 2009. At the second step, the ALJ concluded from the medical evidence that Kohl had the following severe impairments: Meniere's disease, asthma, and migraine headaches. At the third step, the ALJ found that Kohl did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Kohl's RFC as follows:

> [Kohl] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Kohl] can occasionally climb, balance, stoop, kneel, crouch, and crawl; he cannot climb ladders, ropes and scaffolding, and he should avoid concentrated exposure to heat and cold, as well as avoid pulmonary irritants and hazards.

(Administrative Record at 25.) Also at the fourth step, the ALJ determined that Kohl was capable of performing his past work as a cashier. Therefore, the ALJ concluded that Kohl was not disabled.

### B. Objections Raised By Claimant

Kohl argues that the ALJ failed to properly consider and weigh the opinion evidence provided by his long-time treating physician, Dr. Vandenbosch. Kohl further argues that the ALJ's RFC assessment is flawed due to the ALJ's improper consideration of Dr. Vandenbosch's opinions. Kohl concludes that this matter should be reversed and remanded for further consideration of Dr. Vandenbosch's opinions.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the

ALJ can accord it less weight.' *Id..*); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th

Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In his first decision, the ALJ addressed Dr. Vandenbosch's opinions as follows:

> [Kohl's] general practitioner, Dr. Daniel Vanderbosch [(*sic*)], submitted a function opinion in May 2011 (Exhibit 13F, 14F). Dr. Vanderbosch [(*sic*)] states that [Kohl] has 4-5 headaches per month, that he is precluded from performing even basic work activities, and needs breaks from the workplace. This treating source statement is not supported by the clinical evidence or [Kohl's] reported activities. The opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion, and appears to be based at least in part on [Kohl's] subjective report of vertigo spells/migraines. In turn, [Kohl] reported to Dr. Vanderbosch [(*sic*)] that his medication takes care of the symptoms but he has occasional flares. Likewise, these dizzy spells do not seem to show up at examinations. Although the doctor stated in his opinion that [Kohl] was unable to engage in any work, it is not clear that the doctor was familiar with the definition of 'disability' contained in the Social Security Act and regulations. The doctor issued an opinion concerning vocational issues, which he is not qualified to do; nor is he qualified to evaluate how those vocational issues concern the finding of disability for [Kohl] under the Social Security Act and regulations. The doctor's opinion is without substantial support from the other evidence of record, including his own longitudinal treatment history of [Kohl] that was routine and

conservative management with mild symptomology and controlled symptoms with medication management, which obviously renders it less persuasive. The undersigned declines to give Dr. Vanderbosch's [(sic)] opinion controlling weight.

(Administrative Record at 30.)

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quotation omitted). Furthermore, if an ALJ rejects the opinions of a treating physician, the regulations require that the ALJ give "good reasons" for rejecting those opinions. *See* 20 C.F.R. § 404.1527(d)(2).

The Court finds that the ALJ has not fully met these requirements. First, as Kohl thoroughly points out in his brief, Dr. Vandenbosch's opinions provide a great deal of information, and his opinions are not "quite conclusory." Dr. Vandenbosch explained that Kohl suffered from Meniere's attacks involving vertigo, dizziness, and hearing problems 2 to 3 times per month, lasting 2 to 5 hours, and resulting in headaches and nausea for an additional 2 to 3 hours. Dr. Vandenbosch also indicated that movement made the attacks worse, and lying in a dark room helped make the attacks better. Dr. Vandenbosch further explained that Kohl suffered from headaches, both cluster headaches and migraines, 4 or 5 time per month. The cluster headaches lasted several hours and the migraine headaches often lasted an entire day. When Kohl suffers from Meniere's disease flare-ups and severe headaches, Dr. Vandenbosch opined that he is unable to perform full-time work. Dr. Vandenbosch also opined that due to Meniere's disease and migraine headaches, Kohl would miss 4 or more days of work per month. Under the circumstances, the Court finds the ALJ's determination that Dr. Vandenbosch's opinions are "quite conclusory" to be without merit.

Second, while the ALJ asserts that Dr. Vandenbosch's opinions are not supported by "clinical evidence," the ALJ points to no inconsistencies in the record, and fails to explain his reasoning for this assertion. Contrary to this conclusory statement regarding a lack of evidential support by the ALJ, the Court finds ample evidence in the record to support Dr. Vandenbosch's opinions. Significantly, between October 2008 and December 2010, Kohl was hospitalized for multiple days at a time, on ten separate occasions for Meniere's disease flare-ups and migraine headaches. Moreover, Kohl's symptoms for these flare-ups included vertigo, dizziness, nausea, vomiting, and ringing in his ears. Additionally, Dr. Vandenbosch on multiple occasions also referred Kohl to the hospital and specialists to treat his Meniere's disease. In his decision, the ALJ does not address this evidence in considering Dr. Vandenbosch's opinions. Accordingly, the Court finds the ALJ's reasoning that Dr. Vandenbosch's opinions lack "clinical evidence" to be without merit.

Third, while the ALJ accurately points out that in general Kohl's daily activities, use of medication, and conservative treatment from Dr. Vandenbosch, are inconsistent with a finding of disability, the ALJ completely ignores Dr. Vandenbosch's conclusion that Kohl suffers from multiple flare-ups of Meniere's disease and migraine headaches multiple times per month. Significantly, these flare-ups incapacitate Kohl for as little as 2 hours, but up to an entire day, multiple times per month. Thus, Dr. Vandenbosch opined that Kohl would miss 4 or more days per month from work due to Meniere's disease and migraine headaches. The Court finds this particular opinion significant because at the administrative hearing, the vocational expert testified that if Kohl were to miss only 2 days of work per month, he would be precluded from full-time employment. The ALJ did not address this aspect of Dr. Vandenbosch's opinion in his decision. Therefore, the Court concludes that the ALJ's failure to address this issue constitutes a flaw in his reasoning for

discounting Dr. Vandenbosch's opinion, and detracts from his overall RFC determination for Kohl.

Finally, the Court is unpersuaded that Dr. Vandenbosch's reliance on Kohl's "subjective reports" is a "good" reason for rejecting Dr. Vandenbosch's opinions. "A patient's report of complaints, or history, is an essential diagnostic tool" for any doctor when he or she is offering a medical opinion or diagnosis. *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir. 1997); *see also Brand v. Secretary of Dept. of Health, Ed. and Welfare*, 623 F.2d 523, 526 (8th Cir. 1980) ("Any medical diagnosis must necessarily rely upon the patient's history and subjective complaints.").

Therefore, under such circumstances, and having reviewed the entire record, the Court concludes the ALJ failed to give "good reasons" for rejecting the opinions of Dr. Vandenbosch. *See Tilley*, 580 F.3d at 680 ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion."). The Court further finds that the ALJ failed in his duty to fully and fairly develop the record with regard to Dr. Vandenbosch's opinions. Additionally, the Court determines that the ALJ's RFC assessment is flawed due to the ALJ's improper consideration of Dr. Vandenbosch's opinions. In particular, the ALJ should have considered and addressed Dr. Vandenbosch's opinion regarding the amount of time Kohl would miss from work each month due to Meniere's disease and migraine headaches when determining Kohl's RFC. Accordingly, the Court determines that this matter should be remanded for further consideration of Dr. Vandenbosch's opinions. On remand, the ALJ shall provide clear reasons for accepting or rejecting Dr. Vandenbosch's opinions and support his reasons with evidence from the record. The ALJ should also reconsider his RFC assessment for Kohl in light of his reconsideration of Dr. Vandenbosch's opinions.

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to fully and fairly develop the record with regard to the opinions of Dr. Vandenbosch's, and fully consider Dr. Vandenbosch's opinion in making his RFC determination for Kohl. Accordingly, the Court finds that remand is appropriate.

## V. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must provide clear reasons for accepting or rejecting the opinions of Dr. Vandenbosch. The ALJ must support his reasons for accepting or rejecting Dr. Vandenbosch's opinions with evidence from the record. The

ALJ must also reconsider his RFC assessment for Kohl in light of his reconsideration of Dr. Vandenbosch's opinions.

## VI. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 30th day of July, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA